## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CRYSTAL A. MOORE**<br>14 South Tionseta Ave.<br>Kane, PA 16735 | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | Civil Action No. _____ |
| | ) | |
| **ASTRAZENECA**<br>**PHARMACEUTICALS LP,**<br>**ASTRAZENECA, LP,**<br>**KBI SUB INC.,** | ) ) ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff, by and through his undersigned attorney, and for her Complaint against AstraZeneca Pharmaceuticals LP, AstraZeneca, LP, and KBI Sub Inc., (hereinafter "AstraZeneca" or "Defendants") and alleges as follows:

1.    This action is brought by Plaintiff seeking damages for personal injuries and economic damages suffered as a result of a defective and dangerous pharmaceutical product, Seroquel, which was manufactured, marketed, distributed and/or sold by AstraZeneca to the general public.

## JURISDICTION AND VENUE

2.    The Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000, excluding interest and costs and there is diversity of the parties. Venue is proper in this district based upon Defendants' significant commercial activities within this district including the advertising, marketing and distribution of Seroquel within the district.

1

3.      This action includes claims for injuries to Crystal A. Moore caused by her ingestion of Seroquel and therefore should be, and plaintiff consents to, transfer to **Multidistrict Litigation No. 1769 In Re: Seroquel Products Liability Litigation,** United States District Court, Middle District of Florida, Orlando Division, the Honorable Anne C. Conway.

## PARTIES

4.      Plaintiff, Crystal A. Moore, is a resident of Pennsylvania. Plaintiff was prescribed, purchased and ingested Seroquel. After using Seroquel, Plaintiff was diagnosed with Diabetes Mellitus.

5.      AstraZeneca Pharmaceuticals LP, is a Delaware limited partnership doing business in the State of Delaware, and the United States.  AstraZeneca Pharmaceuticals LP, is the United States Subsidiary of AstraZeneca PLC, and was created as a result of the union of Zeneca Pharmaceuticals and Astra Pharmaceuticals LP in the United States after the 1999 merger.  AstraZeneca Pharmaceuticals LP's principal place of business is in Delaware, 1800 Concord Pike, P.O. Box 15347, Wilmington, Delaware 19850.  Upon information and belief AstraZeneca Pharmaceuticals LP's general and limited partners are: AstraZeneca AB, a Swedish corporation with its principal place of business in Sweden; Zeneca Inc., a Delaware corporation with its principal place of business in Delaware; Astra USA Inc., a New York corporation with it's principal place of business in Delaware; and Astra US Holdings Corporation, A Delaware corporation with it's principal place of business in Delaware. Therefore, AstraZeneca Pharmaceuticals LP is a citizen of Delaware, New York and Sweden.

6.      Defendant, AstraZeneca LP, is a Delaware limited partnership doing business in the State of Delaware and the United States. AstraZeneca LP's principal place

2

of business is in Delaware.  Upon information and belief AstraZenecca LP's general partner is AstraZeneca Pharmaceuticals LP, which as stated above is a citizen of Delaware, New York, and Sweden.  AstraZeneca LP's sole limited partner, KBI Sub Inc., is incorporated in the State of Delaware and its principal place of business is in New Jersey.  Therefore, AstraZeneca LP is a citizen of Delaware, New York, New Jersey and Sweden.

7.    Defendant, KBI Sub Inc., is incorporated in the State of Delaware and its principal place of business is in New Jersey.  KBI Sub Inc. is AstraZeneca LP's sole limited partner.  Therefore, KBI Sub Inc. is a citizen of the State of Delaware and New Jersey.

8.    AstraZeneca Pharmaceuticals LP, AstraZeneca LP, and KBI Sub Inc., shall be collectively referred to as "AstraZeneca" or "Defendants".  At all times relevant herein, the Defendants' were in the business of designing, testing, monitoring, manufacturing, labeling, advertising, marketing, promoting, selling and distributing pharmaceuticals, including Seroquel, for the use by the mainstream public, including Plaintiff Christine Briglia.

## FACTUAL BACKGROUND

9.    This is an action against the AstraZeneca Defendants on behalf of the Plaintiff who was prescribed the prescription drug Seroquel, which is an "anti-psychotic" medication belonging to a class of drugs referred to as "atypical anti-psychotics".

10.    Plaintiff ingested the prescribed dosage of said drug in accordance with the prescription written for the Plaintiff.

11.    Seroquel causes serious and sometimes fatal injuries including but not limited to, ketoacidosis, pancreatitis, and diabetes mellitus, and other serious health

3

problems associated with the onset of diabetes including heart disease, blindness, coma, seizures and death.

12.    At all times relevant herein, the AstraZeneca Defendants, either directly or through their agents, servants, and employees, designed, manufactured, marketed, advertised, distributed, and sold Seroquel for the treatment of schizophrenia, bipolar disorder, and other "off-label" uses.

13.    Those persons who were prescribed and ingested Seroquel, including Plaintiff, have suffered severe and permanent personal injuries, including diabetes, pancreatitis, hyperglycemia, diabetic ketoacidosis, diabetic coma, and death, as well as other severe and permanent injuries.

## History of Seroquel

14.    In September 1997, the Food and Drug Administration ("FDA") approved the newest "atypical anti-psychotic," Seroquel, for use in the United States. At that time, Seroquel was approved for use in dosages of 25 mg, 100 mg and 200mg tablets.

15.    Seroquel is now available in 25 mg, 50 mg, 100 mg, 200 mg, 300 mg and 400 mg dosages.

16.    The prescription drug Seroquel is an "anti-psychotic" medication, belonging to a class of drugs referred to as "atypical anti-psychotics". Other atypical anti-psychotics include Zyprexa (Eli Lilly), Risperdal (Johnson & Johnson) and Abilify (Bristol-Myers Squibb), which have been in use in the United States since the early to mid 1990's.

17.    Seroquel is a medication commonly prescribed to patients to aid in the treatment of mental disorders including schizophrenia. The pharmacologic action of Seroquel is thought to be dependent on its ability to block or moderate the level of

dopamine, a chemical found in the brain that in excessive amounts is believed to cause abnormal thinking and hallucinations. It appears to work primarily by blocking neurotransmitter sites of serotonin and dopamine, as well as histamine receptors.

18. Seroquel was widely advertised, marketed and represented by the AstraZeneca Defendants, in its label, package insert, *Physicians Desk Reference* entry and otherwise, as a safe and effective atypical anti-psychotic.

19. Seroquel was marketed heavily by the AstraZeneca Defendants as a safe and effective treatment for schizophrenia and the AstraZeneca Defendants' promised fewer side effects than other similar treatments including the other atypical anti-psychotics on the market.

20. The AstraZeneca Defendants, through their marketing departments, sales managers, and field sales force and other agents, servants and employees promoted the drug for uses beyond its approved indications, offering incentives to doctors to increase prescriptions. Through these marketing efforts, the AstraZeneca Defendants were able to capture a larger market share in the anti-psychotic market.

21. These marketing efforts were designed and implemented to create the impression in physicians', patients' and plaintiff's minds that Seroquel was safe and effective and that it carried less risk of side effects and adverse reactions than other available treatments.

22. The marketing and promotion efforts of the AstraZeneca Defendants, their agents, servants and/or employees served to overstate the benefits of Seroquel and minimize and downplay the risks associated with the drug.

23. On May 6, 1999, the AstraZeneca Defendants were told by the FDA that materials they continued to distribute, despite a warning letter dated November 24, 1998,

5

were "determined to be false, lacking in fair balance, or otherwise misleading, and in violation of the Federal Food, Drug and Cosmetic Act and the regulations promulgated thereunder."

24.    The FDA had specific objections to numerous promotional materials that they directed be "[I]mmediately discontinued...".    These objections involved the AstraZeneca Defendants use of promotional materials and included the following:

    a.    Materials that state or imply that Seroquel is effective in a broader range of mental conditions, including bipolar disorder and schizoaffective disorder, are misleading (e.g., brochures #SQ1035, #SQ1112).    Seroquel is indicated for the manifestations of psychotic disorders as determined by clinical trials in schizophrenic inpatients.    Application to broader or additional mental disorders would require substantiation from adequate and well-controlled studies designed to examine the specific mental conditions.

    b.    The mechanism of action of Seroquel, as well as other antipsychotic drugs, is unknown.    Therefore, materials that discuss how Seroquel "works" without stressing the theoretical nature of this information, are misleading (e.g., brochures #SQ1059, #PR1048).

    c.    Materials in which the prominence and readability of the risk information fails to be reasonably comparable to the information regarding the effectiveness of Seroquel lack fair balance (e.g., journal ad #SQ1089, brochure #SQ1139).    In addition, materials that fail to disclose the important warnings and precautions (i.e., neuroleptic malignant syndrome, tardive dyskinesia, orthostatic hypotension, risk of cataract development, and seizures) are lacking fair balance because these are considered to be priority safety consideration (e.g, journal #SQ1088).

25.    The AstraZeneca Defendants made affirmative assertions of material fact including but not limited to Seroquel was safe if used as directed, no specific laboratory tests were recommended and Seroquel was safer than other alternative medications.

26.    The AstraZeneca Defendants knew these assertions to be false or recklessly failed to ascertain their truth or falsity.

6

27.     The AstraZeneca Defendants also fraudulently concealed important safety information from physicians, the FDA, the public and Plaintiff, including but not limited to the AstraZeneca Defendants' awareness of numerous reports of diabetes associated with the use of Seroquel, beyond the background rate, and beyond the rate for other anti-psychotic agents. The AstraZeneca Defendants as manufacturers of ethical drugs had a duty to disclose said information.

28.     The AstraZeneca Defendants were aware that the drug caused diabetes mellitus, pancreatitis and ketoacidosis, but the AstraZeneca Defendants concealed such information and made misrepresentations that the drug was safe.

29.     The anti-psychotic drug market is one of the largest drug markets worldwide.

30.     The AstraZeneca Defendants viewed Seroquel as a blockbuster product with significant projected growth potential. In 2002 alone, Seroquel reached over $1.1 Billion in sales.

31.     Upon information and belief, Seroquel is one of the AstraZeneca Defendants= top-selling drugs.

32.     Since the AstraZeneca Defendants introduced Seroquel in 1997, over 24.6 million prescriptions have been made and it has been prescribed to more than 13 million people worldwide.

33.     In 2003, approximately seven million prescriptions for Seroquel were dispensed, resulting in more than $2 Billion in sales.

34.     In 2005, Seroquel reached approximately $2.7 Billion in annual sales and controlled approximately 31% of the market share for atypical anti-psychotics.

35.     Worldwide sales for Seroquel in the first quarter of 2006 compared with sales a year ago in the same period were $807 million, up 27 percent.

### Adverse Effects Related To Seroquel Use

36.     In an extensive independent study of over 8,000 New York mental health patients, published in September of 2004, it was found that the risk of diabetes was over 300% higher in patients who took Seroquel.

37.     The use of Seroquel is now known by the public, the FDA and physicians to cause serious and sometimes fatal injuries including, but not limited to, ketoacidosis, pancreatitis, and diabetic mellitus, and other serious health problems associated with diabetes including heart disease, blindness, coma, seizures and death.

38.     In August 2003, the AstraZeneca Defendants became further aware of the link between Seroquel and diabetes. These new reports, described an increased incidence of diabetes in patients receiving Seroquel, than in patients receiving older anti-psychotics, or even other atypicals, including Zyprexa, Clozaril and Risperdal.

39.     The reported risk associated with Seroquel and the onset of diabetes is nearly 3.34 times higher than older drugs used to treat schizophrenia, such as Haldol. According to these reports, compared to other drugs in its class, Zyprexa, (Eli Lilly & Co.) - 1.27 times more likely, and Risperdal (Johnson & Johnson) - 1.49 times more likely, Seroquel has a much greater increased association with the onset of diabetes mellitus than any other anti-psychotic on the market.

40.     Consumers, including Plaintiff, who have used Seroquel, have available several alternative atypical anti-psychotic medications.

8

41.    In fact, in December 2000, the AstraZeneca Defendants knew that there was no clear evidence that Seroquel was more effective or better tolerated than conventional anti-psychotics including Haldol and Thorazine.

42.    It should be noted that there is a significant difference among the costs of Haldol and Seroquel per month: $35 versus $414, respectively.

## Seroquel Causes Diabetes and Other Serious Injuries

43.    Shortly after the AstraZeneca Defendants began selling Seroquel, the AstraZeneca Defendants began to receive reports of consumers who were using Seroquel suffering from hyperglycemia, acute weight gain, exacerbation of diabetes mellitus (hereinafter Adiabetes@), development of diabetes, pancreatitis, and other severe diseases and conditions.  The AstraZeneca Defendants knew, or should have been aware of these reports.

44.    By July 2001, the AstraZeneca Defendants had received at least 46 reports of patients taking Seroquel and developing hyperglycemia or diabetes mellitus, of which there were 21 cases of ketoacidosis or acidosis and 11 deaths.  By December 31, 2003, the AstraZeneca Defendants had received reports of at least 23 additional cases, bringing the total to 69.  Most of these patients developed the above conditions within six months of their use of Seroquel.

45.    The AstraZeneca Defendants were or should have been aware of studies and articles in 1998 and 1999 confirming a link between drugs like Seroquel and new onset diabetes and permanent hyperglycemia related adverse events.  *Wirshing. DA, Novel Antipsychotics and New Onset Diabetes.*  Biol.  Psychiatry, 1998:15, 44:778-83; *Allison, DB, Antipsychotic-Induced Weight Gain: A Comprehensive Research Synthesis.*  Am. J. Psychiatry, 1999:156:1686-96.

9

46.    Studies conducted in the United States and Europe have established that numerous patients treated with Seroquel experienced a significantly higher incidence of severe and permanent diseases and conditions, including dangerous rises in blood glucose levels.

**<u>Defendants' Failure to Warn of the Dangers of Seroquel</u>**

47.    At the time of the prescription of Seroquel to the Plaintiff, the AstraZeneca Defendants had not adequately warned Plaintiff or his/her physicians, and/or did not adequately and effectively communicate all warnings about the risk of diabetes, hyperglycemia, diabetic ketoacidosis, or other serious injuries caused by Seroquel.

48.    The product warnings for Seroquel in effect during the relevant time period were vague, incomplete or otherwise inadequate, both substantively and graphically, to alert prescribing physicians as well as consumer patients of the actual risks presented by the use of this drug.

49.    In fact, the product information section for Seroquel in the *Physicians Desk Reference* for the years 1999, 2000, 2001, 2002, 2003 and 2004, contains no statement in the WARNINGS section to alert anyone of the risks of diabetes, ketoacidosis or pancreatitis associated with the use of Seroquel.

50.    However, in Japan, the AstraZeneca Defendants warned of the risks of diabetes since 2002.

51.    The Japanese "label" for Seroquel provides, and has provided since 2002, a detailed warning regarding the risks of diabetes associated with Seroquel, and specifically informs physicians regarding the necessity of monitoring patients on Seroquel. At the time Plaintiff ingested Seroquel, the AstraZeneca Defendants had not adopted this label for the distribution of Seroquel in the United States.

10

52.     The label the AstraZeneca Defendants issued in Japan, but not in the United States, warns specifically of the diabetes risk, prominently in the beginning of the package label stating:

    a.     Quetiapine is contraindicated for use in patients with diabetes or a history of diabetes;

    b.     Quetiapine should be used with caution in patients with risk factors for diabetes, including hyperglycemia, obesity or a family history of diabetes;

    c.     Patients receiving quetiapine should be carefully monitored for symptoms of hyperglycemia and the drug should be discontinued if such symptoms occur. The symptoms of severe hyperglycemia include weakness, excessive eating, excessive thirst, and excessive urination; and,

    d.     Physicians should educate patients and their family members about the risk of serious hyperglycemia associated with quetiapine and how to identify the symptoms of hyperglycemia.

53.     On September 11, 2003, the FDA informed the AstraZeneca Defendants that they must make labeling changes to Seroquel, due to an increasing prevalence of diabetes-related illnesses associated with this drug. The following information appeared in the WARNINGS section for Seroquel in the 2005 *Physicians Desk Reference*:

    Hyperglycemia, in some cases extreme and associated with ketoacidosis or hyperosmolar coma or death, has been reported in patients treated with atypical antipsychotics, including Seroquel. Assessment of the relationship between atypical antipsychotic use and glucose abnormalities is complicated by the possibility of an increased background risk of diabetes mellitus in patients with schizophrenia and the increasing incidence of diabetes mellitus in the general population. Given these confounders, the relationship between atypical antipsychotic use and hyperglycemia-related adverse events is not completely understood. However, epidemiologic studies suggest an increased risk of treatment emergent hyperglycemia-related adverse events in patients treated with atypical antipsychotics. Precise risk estimates for hyperglycemia-related adverse events in patients treated with atypical antipsychotics are not available.
    Patients with an established diagnosis of diabetes mellitus who are started on atypical antipsychotics should be monitored regularly for

worsening of glucose control. Patients with risk factors for diabetes mellitus (e.g., obesity, family history of diabetes) who are starting treatment with atypical antipsychotics should undergo fasting blood glucose testing at the beginning of treatment and periodically during treatment. Any patient treated with atypical antipsychotics should be monitored for symptoms of hyperglycemia including polydipsia, polyuria, polyphagia, and weakness. Patients who develop symptoms of hyperglycemia during treatment with atypical antipsychotics should undergo fasting blood glucose testing. In some cases, hyperglycemia has resolved when the atypical antipsychotic was discontinued; however, some patients required continuation of anti-diabetic treatment despite discontinuation of the suspect drug. 57. Recently, researchers at the National Institute of Mental Health published a report on atypical anti-psychotics, including Seroquel, which found that the majority of patients in each group discontinued their assigned treatment owing to inefficacy or intolerable side effects or for other reasons and that the atypicals, including Seroquel, were no more effective than the older, cheaper, and still available conventional antipsychotic perphenazine. This report echoes the conclusions reported in the *British Medical Journal* in 2000.

54.    The AstraZeneca Defendants misrepresented and failed to appropriately warn consumers, including Plaintiff, and the medical and psychiatric communities of the dangerous risk of developing diabetes, pancreatitis, hyperglycemia, diabetic ketoacidosis, and diabetic coma, as well as other severe and permanent health consequences caused by Seroquel, and consequently placed their profits above the safety of its customers.

55.    By reason of the foregoing, Plaintiff has been severely and permanently injured and will require constant and continuous medical care and treatment.

### Plaintiff's Use of Seroquel

56.    Plaintiff was prescribed and began taking Seroquel as prescribed by her prescriber.

57.    Plaintiff used Seroquel as prescribed and in a foreseeable manner.

58.    As a direct and proximate result of using Seroquel, Plaintiff was seriously injured and developed the permanent, life threatening condition of diabetes.

59.    Plaintiff, as a direct and proximate result of ingesting Seroquel, has suffered severe pain and has sustained permanent injuries and emotional distress.

60.    Had Plaintiff known of the full extent of the risks and dangers associated with Seroquel, Plaintiff would not have taken Seroquel.

## EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

61.    The running of any statute of limitation has been tolled by reason of the AstraZeneca Defendants' fraudulent conduct. The AstraZeneca Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiff and Plaintiff's prescribing physicians the true risks associated with taking Seroquel.

62.    As a result of the AstraZeneca Defendants actions, Plaintiff and Plaintiff's prescribing physicians were unaware, and could not reasonably know or have learned through reasonable diligence that Plaintiff had been exposed to the risks alleged herein and that those risks were the direct and proximate result of the AstraZeneca Defendants= acts and omissions.

63.    Furthermore, the AstraZeneca Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the truth, quality and nature of Seroquel. The AstraZeneca Defendants were under a duty to disclose the true character, quality and nature of Seroquel because this was a non-public information over which the AstraZeneca Defendants had and continue to have exclusive control, and because the Defendants knew that this information was not available to the Plaintiff, medical providers and/or to health facilities. In addition, the AstraZeneca Defendants are estopped from relying on any statue of limitation because of their intentional concealment of these facts.

64.    The Plaintiff had no knowledge that the AstraZeneca Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment and wrongdoing by the AstraZeneca Defendants, Plaintiff could not have reasonably discovered the wrongdoing at any time prior. Also, the economics of this fraud should be considered. The AstraZeneca Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing and promoting a profitable drug, notwithstanding the known or reasonably known risks. Plaintiff and his/her medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and were forced to rely on the AstraZeneca Defendants' representations.

## COUNT I
## NEGLIGENCE

65.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

66.    Defendant is the designer, manufacturer, and seller of the drug Seroquel.

67.    At all times herein mentioned, Defendants had a duty to properly research, design, formulate, compound, test, manufacture, produce, process, assemble, inspect, distribute, market, label, promote, package, advertise, sell and adequately warn of the risks and dangers of Seroquel.

68.    At all times herein mentioned, Defendants failed to exercise ordinary care and negligently and carelessly researched, designed, formulated, compounded, tested, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised and sold Seroquel and failed to adequately test and warn of the risks and dangers of Seroquel.

69.    When placed in the stream of commerce in 1997, Seroquel was not

accompanied by adequate warnings regarding the significant blood sugar related risks associated with the ingestion of Seroquel, particularly diabetes mellitus. The warnings given by the defendant did not accurately reflect the existence of the risk, let alone the incidence, symptoms, scope, or severity of such injuries.

70.    Defendant failed to perform adequate testing concerning the safety of the drug Seroquel in that adequate testing would have shown that Seroquel poses serious risk of blood sugar related problems which would have permitted adequate and appropriate warnings to have been given by Defendant to prescribing physicians, health insurance companies, the various states' formularies, and the consuming public.

71.    At all times herein mentioned, Defendants failed to investigate thoroughly and promptly report adverse reactions and side effects of Seroquel to the appropriate authorities and to make the information available to the public, including the Plaintiff herein.

72.    Defendant had a duty to exercise reasonable care in the design, manufacture, sale, and distribution of the drug, Seroquel, including a duty to assure that the product did not cause users to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs.

73.    Defendant was negligent in the design, manufacturing, testing, advertising, marketing, promotion, labeling, warnings given, and sale of Seroquel in that, among other things, the Defendant:

   a.    failed to use reasonable care to design an atypical anti-psychotic that was safe for its intended and foreseeable uses, not defective, and not unreasonably dangerous;

   b.    failed to use reasonable care in designing and manufacturing Seroquel as to make it safe for its intended uses, not defective, and not unreasonably dangerous;

c.  recklessly, falsely, and deceptively represented or knowing omitted, suppressed, and/or concealed material facts regarding the safety and efficacy of Seroquel from prescribing physicians, the medical community at large, health insurers, state formularies;

d.  negligently marketed Seroquel despite the fact that risks of the drug were so high and the benefits of the drug were so speculative that no reasonable pharmaceutical company, exercising due care, would have done so;

e.  failed to use reasonable care to make reasonable tests, inspections, drug trials, and/or evaluations necessary to discover such defects and unreasonably dangerous conditions associated with defendant's drug, Seroquel;

f.  failed to comply with and/or to use reasonable care to comply with standards of care including accepted industry standards, FDA recommendations, government regulations, statutes, in the design, manufacture, affixing of warnings, and otherwise production and distribution of defendant's drug, Seroquel;

g.  failed to use reasonable care to timely remove and/or recall from the market, retrofit, and/or otherwise prevent the continued contact of

    a.  plaintiff or persons like plaintiff with such defects and unreasonably dangerous conditions of Seroquel;

h.  failed to use reasonable care to investigate and/or use known and/or knowable reasonable alternative designs, manufacturing processes, and/or materials for Seroquel;

i.  failed to use reasonable care to warn plaintiff of dangers known and/or reasonably suspected by defendant to be associated with Seroquel;

j.  failed to timely use reasonable care to discover the dangerous conditions or

16

character of defendant's drug, Seroquel;

k.  failed to use due care in the design, testing and manufacturing of Seroquel so as to prevent the aforementioned risks, including, inter alia, diabetes mellitus, and the serious complications streaming therefrom including seizures, coma, death, liver disease, kidney disease, blindness, and other serious side effects including rapid weight gain, pancreatitis, increased thirst, urinary frequency and hyperglycemia, to individuals when Seroquel was used as a medication;

l.  failed to issue proper warnings regarding all possible adverse side effects associated with the use of Seroquel and the comparative severity and duration of such adverse effects, despite the fact that the defendant knew, or should have known, that numerous cases reports, adverse event reports, and other data that associated Seroquel with diabetes mellitus, and the serious complications streaming therefrom including seizures, coma, death, liver disease, kidney disease, blindness, and other serious side effects including rapid weight gain, pancreatitis, increased thirst, urinary frequency and hyperglycemia;

m.  failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety of Seroquel;

n.  failed to provide adequate training and information to medical care providers for the appropriate use of Seroquel;

o.  failed to warn plaintiff and healthcare providers, prior to actively encouraging and promoting the sale of Seroquel, either directly, or indirectly, orally, in writing, or other media about the following:

p.  The need for a battery of diagnostic tests to be performed on the patient prior to ingesting Seroquel to discover and ensure against potentially fatal side effects;

and/or

q. The need for comprehensive, regular medical monitoring to ensure early discovery of potentially fatal side effects; and/or

r. The adverse side effects associated with the use of Seroquel, including, but not limited to, diabetes mellitus; and/or

s. The possibility of becoming disabled as a result of using Seroquel; and,

t. failed to timely develop and implement a safer, alternative design of Seroquel, which would meet the same need without the known risks associated with Seroquel and which would not have made the product too expensive to maintain its utility.

74. Despite the fact that the defendant knew or should have known that Seroquel caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, the defendant continued to market Seroquel to consumers, including the plaintiff, when there were safer alternative methods available.

75. Defendant knew or should have known that consumers such as plaintiff would foreseeably suffer injury as a result of defendant's failure to exercise ordinary care as described above.

76. As a direct and proximate result and legal result of the defendant's failure to supply appropriate warnings for the drug, Seroquel, and as a direct and legal result of the negligence, carelessness, other wrongdoing and action of the defendant described herein, the Seroquel recipient Plaintiff ingested Seroquel and suffered significant injury.

77. Defendant's negligence was a proximate cause of the harm suffered by the plaintiff.

78. As a direct and proximate cause and legal result of the defendant's negligence, carelessness, and the other wrongdoing and actions of the defendant as

18

described herein, the plaintiff has suffered physical personal injury, including but not limited to, being diagnosed with Diabetes Mellitus, medical expenses, future medical expense, and have incurred financial expenses and has suffered economic losses.

79.    As a result of said negligence and carelessness of Defendants, Plaintiff suffered injuries and damages in the amount of $75,000.00.

**COUNT II**
**STRICT PRODUCT LIABILITY**
**(Failure to Warn)**

80.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

81.    Defendants defectively researched, designed, formulated, compounded tested, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged and/or advertised its product Seroquel.

82.    The Seroquel manufactured and/or supplied by defendant was unaccompanied by proper warnings regarding all possible adverse side-effects and the comparative severity and duration of such adverse effects; the warnings given did not accurately reflect the severity or duration of the adverse side effects or the true potential and/or likelihood or rate of the side effects. Defendant failed to perform adequate testing in that adequate testing would have shown that Seroquel possessed serious potential side effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made with respect to the use of Seroquel. Had the testing been adequately performed, the product would have been allowed to enter the market, if at all, only with warnings that would have clearly and completely identified the risks and dangers of the drug.

83.    The Seroquel manufactured and/or distributed and/or supplied by

defendant was defective due to inadequate post-marketing warning or instruction because defendant failed to provide adequate warnings to users or consumers of Seroquel and continued to aggressively promote Seroquel.

84.    As a direct and proximate cause and legal result of the defendant's negligence, carelessness, and the other wrongdoing and actions of the defendant as described herein, the plaintiff has suffered physical personal injury, including but not limited to, being diagnosed with Diabetes Mellitus, medical expenses, future medical expense, and have incurred financial expenses and has suffered economic losses.

85.    As a direct and proximate result of the conduct of Defendant, Plaintiff demands judgment in his favor and against AstraZeneca in a sum in excess of $75,000.00; for costs herein incurred; attorneys fees; for such other and further relief as this Court deems just and proper.

## COUNT III
## STRICT PRODUCT LIABILITY
### (Pursuant to Restatement Second of Torts 402a (1965))

86.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

87.    The Seroquel manufactured and/or distributed and/or supplied by defendant was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, the foreseeable risks exceeded the benefits associated with the design and formulation of the drug.

88.    Alternatively, the Seroquel manufactured and/or distributed and/or supplied by defendant was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more

20

dangerous than alternative drugs available for the treatment of schizophrenia or bi-polar mania, namely so-called first generation anti-psychotics.

89.    There existed, at all times material hereto, safer alternative medications.

90.    Defendant did not perform adequate testing upon Seroquel. Adequate testing would have revealed that Seroquel causes serious adverse effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made.

91.    The Seroquel manufactured, designed, marketed, distributed and/or sold by defendant was unaccompanied by proper and adequate warnings regarding adverse effects associated with the use of Seroquel, and the severity and duration of such adverse effects; the warnings given did not accurately reflect the symptoms, scope or severity of adverse effects and did not accurately relate the lack of efficacy.

92.    Defendant did not warn the FDA of material facts regarding the safety and efficacy of Seroquel, which facts defendant knew or should have known.

93.    The Seroquel manufactured and/or distributed and/or supplied by defendant was defective due to inadequate post-marketing warning or instruction because, after the defendant knew or should have known of the risk of injury from Seroquel, they failed to provide adequate warnings to users or consumers of Seroquel and continued to promote Seroquel.

94.    Based upon information and belief, Defendants actually knew of Seroquel's defective nature but continued to defectively design, manufacture, market and sell Seroquel so as to maximize sales and profits at the expense of public health and safety, in conscious disregard of the foreseeable harm caused by Seroquel.

95.    As a direct and proximate cause and legal result of the defendant's

negligence, carelessness, and the other wrongdoing and actions of the defendant as described herein, the plaintiff has suffered physical personal injury, including but not limited to, being diagnosed with Diabetes Mellitus, medical expenses, future medical expense, and have incurred financial expenses and has suffered economic losses.

96.    As a direct and proximate result of the conduct of Defendants, Plaintiff demands judgment in his favor and against AstraZeneca in a sum in excess of $75,000.00; for costs herein incurred; attorneys fees; for such other and further relief as this Court deems just and proper.

## COUNT IV
## COMMON LAW FRAUD

97.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

98.    Defendants, from the time that Seroquel was first manufactured, marketed and distributed, and up to the present, willfully misrepresented, omitted material facts and deceived Plaintiff by concealing from the Plaintiff, and Plaintiff's physicians and the general public, the true facts concerning Seroquel, which Defendants, as manufacturer, maker and distributor had a duty to disclose.

99.    Defendant either knew or should have known that Seroquel was dangerous and not as effective for its purpose as represented, and posed greater risks than disclosed, and otherwise not as represented to be as alleged above.

100.    Defendants knew that Seroquel did not have as favorable a safety profile and was no more effective or better tolerated than conventional antipsychotics.

101.    Defendant was under a duty to disclose this information to the Plaintiff under the common law as well as laws requiring it not to engage in false and deceptive trade practices, and as otherwise alleged in this complaint, because Defendant made

representations and partial disclosures concerning the nature and quality of this product which they had a duty to correct, because Defendant was in a superior position to know the true state of the facts about the dangerous and defective nature of Seroquel and its known risks to the Plaintiff. These deliberate and/or intentional omissions of material facts and misrepresentations include but are not limited to:

    a.   suppressing, failing to disclose and mischaracterizing the known risks of ingesting Seroquel;

    b.   omitting material information showing that Seroquel was no more effective than other anti-psychotic drugs on the market available;

    c.   failure to timely and fully disclose the actual results of clinical tests and studies related to Seroquel;

    d.   failing to issue adequate warnings concerning the risks and dangers of ingesting Seroquel which would disclose the nature and extent of the side effects of Seroquel;

    e.   failing to disclose that adequate and/or standard and/or generally accepted standards for pre-clinical and clinical testing had not been done;

    f.   failing to disclose that adequate and/or standard and/or generally accepted standards for post-marketing testing had not been done; and,

    g.   making the representations concerning the safety, efficacy and benefits of Seroquel as detailed in this complaint without full and adequate disclosure of the underlying facts which rendered such statements false and misleading.

    102.   Plaintiff did not know, and could not learn, the material facts and important information Defendant omitted and suppressed. The facts and information suppressed and

23

concealed by Defendant is material, and of such a nature that it can be reasonably presumed that the suppression and concealment of such facts caused, contributed to, and/or was a substantial factor in causing to Plaintiff to ingest Seroquel and be exposed to such unnecessary risks.

103.   Defendants intentionally misrepresented and omitted material facts, and concealed and suppressed the true facts concerning Seroquel with the intent to defraud Plaintiff, in that Defendants knew that Plaintiff's physicians would not prescribe Seroquel and Plaintiffs would not have used Seroquel, if they were aware of the true facts concerning the dangers of Seroquel.

104.   Defendants' actions in concealing the true risks associated with Seroquel results in an equitable tolling of the statute of limitations.

105.   As a result of Defendant's fraud, suppression and omission of material facts, the Plaintiff acted to her detriment in purchasing and ingesting Seroquel, which they would not have purchased or ingested had they been told the truth.

106.   As a direct and proximate cause and legal result of the defendant's fraud as described herein, the plaintiff has suffered physical personal injury, including but not limited to, being diagnosed with Diabetes Mellitus, medical expenses, future medical expense, and have incurred financial expenses and has suffered economic losses.

107.   As a result of the foregoing willful, intentional, fraudulent misrepresentations, omissions of material facts and deceitful conduct by Defendants, the Plaintiff demands judgment in his favor and against AstraZeneca in a sum in excess of $75,000.00; for costs herein incurred; attorneys fees; for such other and further relief as this Court deems just and proper.

24

<u>COUNT V</u>
**BREACH OF EXPRESS WARRANTY**

108.   Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

109.   Defendant expressly warranted to Plaintiff and Plaintiff's agents and physicians, by and through statements made by Defendants or its authorized agents or sales representatives, package inserts, and other written materials intended for physicians, that Seroquel was safe and well accepted by clinical studies and fit and proper for its intended use.

110.   Seroquel does not conform to these express representations because Seroquel is not safe and has high levels of serious, life-threatening, side effects.

111.   Plaintiff relied on the skill, judgment, representations, and foregoing express warranties of Defendants.  Said warranties and representations were false in that Seroquel was not safe and was unfit for the uses for which it was intended.

112.   As a direct and proximate cause and legal result of the defendant's negligence, carelessness, and the other wrongdoing and actions of the defendant as described herein, the plaintiff has suffered physical personal injury, including but not limited to, being diagnosed with Diabetes Mellitus, medical expenses, future medical expense, and have incurred financial expenses and has suffered economic losses.

113.   As a direct and proximate result of the breach of said express warranties by Defendants, the Plaintiff demands judgment in his favor and against AstraZeneca in a sum in excess of $75,000.00; for costs herein incurred; attorneys fees; for such other and further relief as this Court deems just and proper.

25

## COUNT VI
## BREACH OF IMPLIED WARRANTY

114.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

115.    Prior to the time that Seroquel was used by Plaintiff, Defendants impliedly warranted to Plaintiff and Plaintiff's agents and physicians that said Seroquel was of merchantable quality and safe and fit for the use for which they were intended.

116.    At the time Defendant marketed, sold and distributed Seroquel for use by Plaintiff, Defendant knew of the use for which Seroquel was intended and impliedly warranted Seroquel to be of merchantable quality and safe and fit for such use.

117.    Plaintiff reasonably relied upon the skill and judgment of Defendant as to whether Seroquel was of merchantable quality and safe and fit for its intended use.

118.    Contrary to such implied warranty, Seroquel was not of merchantable quality or safe or fit for its intended use, because Seroquel was and is unreasonably dangerous and unfit for the ordinary purposes for which it was used as described above.

119.    As a direct and proximate cause and legal result of the defendant's negligence, carelessness, and the other wrongdoing and actions of the defendant as described herein, the plaintiff has suffered physical personal injury, including but not limited to, being diagnosed with Diabetes Mellitus, medical expenses, future medical expense, and have incurred financial expenses and has suffered economic losses.

120.    As a direct and proximate result of Defendants' conduct, the Plaintiff demands judgment in his favor and against AstraZeneca in a sum in excess of $75,000.00; for costs herein incurred; attorneys fees; for such other and further relief as this Court deems just and proper.

26

## COUNT VII
## UNJUST ENRICHMENT

121.    Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

122.    Defendant has been unjustly enriched in the amount of the profits they have earned as a result of Defendant's conduct as alleged herein.

123.    Defendant has been unjustly enriched at the expense of and to the detriment of the Plaintiff.

124.    As a direct and proximate cause of Defendants conduct, the Plaintiff demands judgment in his favor and against AstraZeneca in a sum in excess of $75,000.00; for costs herein incurred; attorneys fees; for such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants jointly and severally as follows:

1.    For past, present, and future special damages, including medical expenses, lost wages, impaired earning capacity, consequential damages, and other out of pocket expenses;

2.    For past, present, and future general damages, including physical pain and suffering, emotional pain and suffering, loss of enjoyment of life, permanent scarring, permanent impairment and/or disability, and increased likelihood or reinjury;

3.    For punitive and exemplary damages;

4.    For disbursements, costs of court and such other relief as is allowed by law.

Respectfully submitted,

Michael J. Miller, Esquire
THE MILLER FIRM, LLC
108 Railroad Avenue
Orange, VA 22960
Tel: (540) 672-4224
Fax: (540) 672-4224
Counsel for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff herewith requests a trial by jury as to all issues of material fact.

Dated:

THE MILLER FIRM, LLC

By:

Michael J. Miller, Esquire
THE MILLER FIRM, LLC
108 Railroad Avenue
Orange, VA 22960
Tel: (540) 672-4224
Fax: (540) 672-4224
Counsel for Plaintiff